IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVE YARN, et al.,                    *

   Plaintiff,                         *

      v.                              *       Civil Action No. RDB-12-3096

HAMBURGER LAW FIRM, LLC, et al.,       *

   Defendant.                         *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## **MEMORANDUM OPINION**

This is a diversity action brought by Plaintiffs Steve Yarn, Karen Yarn, and Yarn & Co., Inc. against Defendants Hamburger Law Firm, LLC, Brian Hamburger, Robert J. Seco, Alan N. Walter, Robert K. Ross, and MarketCounsel, LLC, for professional malpractice, intentional and negligent misrepresentation, and breach of contract. Pending before this Court is Defendants' Motion to Dismiss (ECF No. 6) pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the Motion of Defendants Hamburger Law Firm, LLC, Brian Hamburger, Robert J. Seco, Alan N. Walter, Robert K. Ross, and MarketCounsel, LLC to Dismiss (ECF No. 6) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED with respect to Count II (Intentional Misrepresentation), Count III (Negligent Misrepresentation), and Count V (Gross Negligence) of Plaintiffs' Complaint and DENIED with respect to Count I (Legal Malpractice) and Count IV (Breach of Contract).

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's' complaint. *See Aziz v.*

1

*Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiffs Steve and Karen Yarn are founding members of Yarn & Co., Inc., an insurance investment firm. Pls.' Compl. ¶ 20. Plaintiffs hired Defendants Hamburger Law Firm and "affiliated firm" MarketCounsel, LLC to provide "legal advice" with respect to the creation of certain investment vehicles. Pls.' Compl. ¶ 31. Defendant Brian Hamburger is the founder and managing member of both of the Defendant limited liability companies. Pls.' Compl. ¶¶ 21-22. Defendants Walter, Seco, Cota, and Ross were employed by the Hamburger Law Firm or MarketCounsel and allegedly provided legal services to Plaintiffs. Pls.' Compl. ¶ 29. Plaintiffs allege that "Defendants indicated that they could structure an 'investment' vehicle for the Plaintiffs and employ appropriate structure and investment products to comply with Maryland law and to raise capital in Maryland and pay investors back at a 6% annual rate on any investment." Pls.' Compl. ¶ 33. Defendants provided these legal services from 2003 through January, 2011. Pls.' Compl. ¶ 34.

It is alleged that, during Defendants' representation of Plaintiffs, Defendants made a number of errors, specifically:

- Defendants "encouraged the Plaintiff to make any potential investors an 'investment client,' notwithstanding that if the Plaintiff did so, any solicitation of funds from that individual would then violate Maryland law." Pls.' Compl. ¶ 37. In accordance with this advice, Defendants allegedly "had the Plaintiffs execute 'Investment Advisory Agreements' with each Maryland insurance client who wished to invest funds with the Plaintiffs," thereby placing Plaintiffs and the clients in a fiduciary relationship. Pls.' Compl. ¶ 39.

- Defendants "required" Plaintiffs to "sign forms for submission to the Maryland Attorney General, Maryland Securities Division in blank," which Defendants then would submit

without prior approval of Mr. Yarn. Pls.' Compl. ¶ 40. Among these submission, Defendants allegedly "list[ed] the Maryland Investors with a fraudulent address" in order to exempt the investors from Maryland law. Pls.' Compl. ¶ 41.

- Defendants listed themselves as the escrow agents in the materials distributed to investors, but the bonds that Defendants had recommended could not be held in escrow; Plaintiffs allege that the Defendants knew or should have known this fact. Pls.' Compl. ¶ 42.

- Plaintiffs relied on Defendants to determine the appropriate investment vehicles, but Defendants selected unnecessarily risky investments; accordingly, Plaintiffs allege that "[t]hrough the poor advice of the Defendants, the funds which were raised were mismanaged by the Defendants and resulted in a wholesale loss of equity." Pls.' Compl. ¶ 45.

Ultimately, Plaintiffs allege that these violations "triggered first an audit and then a cease and desist order and resulted in a wholesale failure of the Defendant to guide Plaintiffs action or to achieve or even be aware of the compliance requirements." Pls.' Compl. ¶ 47. Specifically, the Maryland Attorney General, Securities Division issued a Cease and Desist Letter to Plaintiffs on September 22, 2009. Pls.' Compl. ¶ 64. Plaintiffs allege all of the included violations pertained to "regulations upon which [Plaintiffs] had relied on Defendants for compliance." Pls.' Compl. ¶ 65.

Subsequently, Defendants sent a letter identifying a potential conflict of interest with respect to their further representation. After recognizing the charges against Plaintiffs, the letter states:

> In responding to the pleadings you may wish to assign all or part of
> the reasons behind your actions and inactions to inadequate legal

> advice that may have been given by the Hamburger Law Firm. You may believe that HLF would not raise this issue on your behalf.
>
> Based on the facts known to us at this time, we have determined that we can represent you and Yarn & Co. in this Proceeding.

Pls.' Compl. ¶ 67. Plaintiffs characterize the conflict as "clear, obvious, and unambiguous," but state that Defendants never recognized or acknowledged the existence of a conflict. Pls.' Compl. ¶ 82.

Plaintiffs also allege that Defendants refused to proceed to trial on behalf of the Plaintiffs and refused to provide independent counsel. Pls.' Compl. ¶¶ 70-71. Moreover, Plaintiffs allege that Defendants "coerced" Steve Yarn to sign a consent order in order to avoid bad publicity. Pls.' Compl. ¶ 76. Accordingly, Defendants Steven Yarn and Yarn & Co. signed a Consent Order on January 10, 2010.

The action currently pending before this Court was initiated on September 13, 2012 when Plaintiffs filed suit in the Circuit Court for Baltimore City, Maryland. Subsequently, Defendants removed to this Court on October 19, 2012 pursuant to 28 U.S.C. § 1332. On November 2, 2012, Defendants filed their Motion to Dismiss. Thereafter, Plaintiffs filed a response and Defendants rebutted with a reply memorandum.

Plaintiffs' Complaint contains five counts. Plaintiffs' first count asserts a legal malpractice claim based upon various actions and recommendations provided to Plaintiffs during the course of Defendants' legal representation. In the second count, Plaintiffs allege intentional misrepresentation[1] arising out of Defendants' statements in the September 2009 conflicts letter and their advice concerning the repercussions of Yarn's signing of the consent order. Alternatively, Plaintiffs assert a negligent misrepresentation claim for the Defendants' assertions

---

[1] Under Maryland law, intentional misrepresentation and fraud have the same elements. *See infra* note 4.

about their proficiency and experience, their advice regarding the consequences of signing the Consent Order, and their statements in the conflict letter. The fourth count asserts a breach of contract claim, while the final count contains a gross negligence claim. On each count, Plaintiffs demand $15 million. Additionally, Plaintiffs demand punitive damages in the amount of $500 million for their intentional misrepresentation claim and $200 million for their gross negligence claim.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim).

5

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 664.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.,* 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler,* 492 F. Supp. 2d 492, 509 (D. Md. 2007). A court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

ANALYSIS

Defendants' Motion to Dismiss raises three main arguments: (1) Plaintiff Karen Yarn is not a proper party in this action; (2) Plaintiff's Complaint fails to state a claim for each of the five causes of action and for punitive damages; and (3) Plaintiffs are barred from recovery by the doctrines of unclean hands and/or *in pari delicto*. In opposition, Plaintiffs argue that they have sufficiently stated a claim and that it would be inappropriate to dismiss this action without an opportunity for discovery. Ultimately, this Court concludes that (1) Plaintiff Karen Yarn lacks standing; (2) Plaintiffs have adequately alleged their claims for legal malpractice and breach of contract; and (3) Plaintiffs have failed to sufficiently allege their claims for intentional misrepresentation, negligent misrepresentation, gross negligence, and punitive damages.

**I.     Plaintiff Karen Yarn Is Not a Proper Party.**

Defendants point out that Karen Yarn, although a founding partner of Yarn & Co., was not allegedly involved in the events relating to Plaintiff's Complaint. Defs.' Mot. Dismiss p. 15. Accordingly, Defendants assert that Plaintiff Karen Yarn is not a proper plaintiff to this suit and that she must be dismissed from the action. *Id.*

Under Article III of the United States Constitution, federal courts may only adjudicate "actual cases and controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). The doctrine of standing consists of three elements: (1) the plaintiff must have suffered an "injury in fact," (2) the injury must be "fairly traceable" to the defendant's challenged conduct, and (3) it must be likely that the plaintiff's injury would be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When assessing standing before a federal court, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

In this case, Plaintiff Karen Yarn has failed to bear the burden of proof in demonstrating that she has standing before this Court. In arguing that Karen Yarn has standing, the only supporting facts that Plaintiffs provide are a citation to a single paragraph in the Complaint and a vague reference to co-Plaintiff Steve Yarn's affidavit.[2] However, the referenced line in the complaint makes no mention of Ms. Yarn, and the only statement in Steve Yarn's affidavit concerning Karen Yarn is that she was "an integral part of Yarn & Co. and was involved in our business and suffered and gained with the failures and success as an active partner." Pls.' Opp., ECF No. 23-9, p. 6. These arguments are insufficient to establish Karen Yarn's standing. Plaintiffs have been unable to identify any injury suffered by Karen Yarn directly, and as such, she lacks standing to sue.

Moreover, Karen Yarn has no cause of action against Defendants under Maryland law. In *Norman v. Borison*, 192 Md. App. 405 (Md. App. 2010), the Court of Special Appeals of Maryland stated that "where the company holds a right of action in tort, this right does not extend to the company's owners, just as a cause of action that belongs to an owner individually would not extend to the company." *Id.* at 422. Accordingly, Karen Yarn is not a proper party to this suit and she must be dismissed from the action.

II.     **The Sufficiency of Plaintiff's Claims Under Rule 12(b)(6).**

Defendants argue that all of the counts in Plaintiffs' Complaint, as well as Plaintiffs' demand for punitive damages, fail to state a claim pursuant to the United States Supreme Court's

---

[2] Specifically, Plaintiffs assert:
> Ms. Yarn's position and standing to recover from the loss she suffered individually as a founding and co-member of Yarn & Co. is set forth in the Complaint (¶ 26). That she was involved in and injured by the malfeasance of the Defendants along with her co-Plaintiffs is sufficiently set forth. In response to the Defendant's conversion of this motion to one for summary judgment, Mr. Yarn's affidavit sets forth, in addition, that Mrs. Yarn directly suffered by the Defendant's actions.

Pls.' Opp., ECF No. 24, pp. 14-15.

interpretation of Rule 12(b)(6) as articulated in *Twombly* and *Iqbal*. After reviewing the Complaint and the briefs of both parties, this Court finds that Counts two, three, and five fail to state a claim; Plaintiffs have, however, plausibly alleged claims for legal malpractice and breach of contract.

### A. Count One - Legal Malpractice

Plaintiffs' first count asserts a claim for legal malpractice. Under Maryland law, the elements of a claim for legal malpractice[3] are "(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Thomas v. Bethea,* 351 Md. 513, 528-29, 718 A.2d 1187 (1998). Plaintiffs assert a variety of bases for their claim, and this Court finds that Plaintiffs' allegations are sufficient to survive a motion to dismiss.

The main bases for Plaintiffs' malpractice claim are contained in a long list of grievances strung together in paragraph 63 of Plaintiffs' Complaint. Plaintiffs also allege that Defendants' conflict letter sent on September 25, 2009 constituted malpractice because Defendants wrongly disclaimed a conflict of interest. Moreover, Plaintiffs allege that Defendants "demanded" that Mr. Yarn waive the conflict and then "coerced" him into signing the Consent Decree in January of 2010. Pls.' Compl. ¶¶ 68, 76. The final basis for Plaintiffs' malpractice claim is Defendants' alleged advice to Plaintiffs that signing the Consent Order "would have no effect on [Plaintiffs'] insurance business." Pls.' Compl. ¶ 77.

---

[3] In Maryland, "an action against an attorney for malpractice may be brought in contract or in tort." *Baker, Watts & Co. v. Miles & Stockbridge*, 95 Md. App. 145, 189, n. 11, 620 A.2d 356 (1993); *see also Restatement (Third) of the Law Governing Lawyers (2000) at § 55, comment c. ("Ordinarily, a plaintiff may cast a legal-malpractice claim as a tort claim, a contract claim, or both ...").* As Plaintiffs bring both a "legal malpractice" and a "breach of contract" claim—and because of Plaintiffs' characterization of their claim in the Complaint and their Opposition to Defendant's Motion to Dismiss—this Court construes Count One as a claim sounding in tort.

Plaintiffs have alleged sufficient facts to meet all of the elements of a legal malpractice claim. First, Plaintiffs have alleged that Defendants were attorneys employed by Plaintiffs. *See* Pls.' Compl. ¶¶ 27-29, 51. Second, Plaintiffs have also alleged that Defendants breached a number of duties to Plaintiffs; for example, Plaintiffs alleged that Defendants provided negligent advice regarding the structuring of investment vehicles and failed to provide adequate advice in order to ensure compliance with Maryland law. *See* Pls.' Compl. ¶ 63. Finally, Plaintiffs have alleged that, as a result of Defendants' malpractice, Plaintiffs had to pay a penalty to the Maryland Attorney General and had to forfeit their insurance and investment business. *See* Pls.' Compl. ¶ 79.

### B. Count Two - Intentional Misrepresentation

The second count of Plaintiffs' Complaint contains a claim for intentional misrepresentation.[4] Specifically, the Plaintiffs argue that the Defendants made fraudulent statements when they told Plaintiffs that there was no conflict of interest and that Plaintiffs' signing of the Consent Order would have no adverse effects. As explained herein, the Plaintiffs have failed to allege a plausible claim for intentional misrepresentation.

In Maryland, the elements of intentional misrepresentation are: (1) the defendant made a false representation to plaintiff; (2) the falsity was known to the defendant or that the representation was made with reckless disregard for its truth; (3) the defendant made the representation to defraud the plaintiff; (4) the plaintiff relied on the misrepresentation and had a right to rely on it; and (5) the plaintiff suffered a compensable injury from that misrepresentation. *Hoffman v. Stamper*, 385 Md. 1, 28, 867 A.2d 276, 292 (2005). Moreover, under Rule 9(b) of the Federal Rules of Civil Procedure, "the circumstances constituting fraud must be stated with

---

[4] Under Maryland law, "intentional misrepresentation" and "fraud" are synonymous and contain the same five elements. *See* B.N. v. K.K., 312 Md. 135, 149, 538 A.2d 1175, 1182 (1988).

particularity" such that a plaintiff "identif[ies] with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler,* 492 F. Supp. 2d 492, 509 (D. Md. 2007).

Plaintiffs claim fails to meet the requirements of Rule 9(b). Specifically, Plaintiffs have not pled the contents of the false representation or the identity of the person making the representation with the required degree of particularity. *See Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc.*, 197 F. Supp. 2d 298, 313-14 (D. Md. 1983) ("The word 'circumstances' is interpreted to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" (quoting *Windsor Assocs. v. Greenfeld,* 564 F. Supp. 273, 280 (D. Md. 1983)). Instead, Plaintiffs simply vaguely refer to "Defendants." *See* Pls.' Compl. ¶¶81-87. With respect to Defendants' statements regarding the consequences of the Consent Order, Plaintiffs also have failed to allege willful misrepresentations or the time or place of the alleged misrepresentations. Thus, there are insufficient allegations explaining the factual circumstances of the purportedly fraudulent conduct. Rule 9(b) requires more extensive factual allegations than Plaintiffs have provided here, and dismissal of Count Two is therefore appropriate.

In addition, each of the alleged bases for Plaintiffs' intentional misrepresentation fails on specific legal grounds. With respect to the statements contained in the September 25, 2009 letter, the Complaint fails to allege justifiable reliance on Defendants' alleged misrepresentations as a matter of law. In particular, Plaintiffs assert that the misrepresentation was "clear, obvious and unambiguous." Pls.' Compl. ¶ 82. If the falsity of the Defendants' statements was "clear" and "obvious" at the time they were made, then Plaintiffs could not reasonably rely upon that statement.

Plaintiffs' allegations with respect to Defendants' alleged misrepresentation of "the financial and career hardship and consequences" of the Consent Order face similar roadblocks. *See* Pls.' Compl. ¶ 86. The repercussions of the Order were obvious—the Consent Order explicitly stated that Plaintiffs would be "barred from engaging in the securities or investment advisory business in Maryland for or on behalf of others, or from acting as a principal or consultant in any entity so engaged."[5] Def. Mot. Dismiss, Ex. 2 ¶ 88, ECF No. 6-3.

### C. Count Three - Negligent Misrepresentation

Plaintiffs' third count asserts an alternative cause of action for negligent misrepresentation. As grounds for the claim, Plaintiffs again point to the statements in the September 25, 2009 conflicts letter and the Defendants' alleged assurances concerning the consequences of signing the Consent Order. Additionally, Plaintiffs allege that Defendants' assertions "regarding their proficiency, experience and suitability for employ" are grounds for a finding of negligent misrepresentation claim. Pls.' Compl. ¶ 90.

Just as Plaintiffs have failed to state a claim for intentional misrepresentation, their claim for negligent misrepresentation is inadequate as well. Under Maryland law, the elements of a claim for negligent misrepresentation are: "(1) the defendant, owing a duty of care to the

---

[5] While the Consent Order was not attached to Plaintiffs' Complaint, this Court sees it necessary to consider the Consent order as it is integral to and explicitly relied upon in Plaintiffs' Complaint. *See American Chiropractic Assoc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *see also HQM, Ltd. V. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999) ("The Fourth Circuit and courts in this district have also recognized an exception for the written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action."). In fact, the justification for the rule seems quite applicable here:
> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*American Chiropractic Assoc.*, 367 F.3d at 234 (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir.1997)) (quotation marks omitted).

plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *Lloyd v. General Motors Corp.*, 397 Md. 108, 135-136, 916 A.2d 257, 273 (2007). Thus, with respect to the conflicts letter and the consequences of the Consent Order, Plaintiffs' negligent misrepresentation claim must fail for lack of justifiable action taken in reliance on the alleged misrepresentations.

Plaintiffs' resort to Defendants' assertions of "proficiency, experience and suitability" is similarly insufficient. In *Baney Corp. v. Agilysys NV, LLC*, 773 F. Supp. 2d 593 (D. Md. 2011), this Court delineated the requirements for an actionable statement under Maryland law:

> Maryland law distinguishes between statements that relate to material facts—which may give rise to cognizable claims—and vague generalities, statements of opinion, or puffery—which are deemed non-cognizable. *See, e.g., McGraw v. Loyola Ford, Inc.*, 124 Md. App. 560, 723 A.2d 502, 512–13 (Md. Ct. Spec. App.1999) (holding that statements that amount to "indefinite generality," "puffing" and "sales talk" cannot give rise to a fraud claim because such statements are " 'offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable [person] would rely'" (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 109 at 757 (5th ed. 1984))); McAleer v. Horsey, 35 Md. 439, 1872 WL 4422 at *7 (1872) ("[F]raud must be material to the contract or transaction which is to be avoided, for if it relate to another matter or to this only in a trivial and unimportant way, it affords no ground for the action of the Court.").

*Id.* at 609-09. Plaintiffs do not allege with any specificity the timing or content of these statements. Moreover, as Plaintiffs characterize these statements as self-serving comments about the Defendants' general qualifications, they are not actionable under Maryland law. Therefore, Plaintiffs fail to state a claim for negligent misrepresentation.

### D. Count Four – Breach of Contract

Plaintiffs' fourth count states a breach of contract claim. Specifically, Plaintiffs allege that "defendants had a contractual obligation owed to Plaintiffs to perform the structuring, compliance and advisory roles for the Plaintiffs [sic] endeavor" and that "Defendants committed a material breach in failing to perform the contracted services." Pls.' Compl. ¶¶ 95-96. In their Motion to Dismiss, Defendants' contention is that Plaintiffs have failed to adequately allege a contractual duty existing between Plaintiffs and Defendants or a breach of that duty.

In order to survive a motion to dismiss, a plaintiff's complaint must "allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff." *Robinson v. GEO Licensing Co., L.L.C.*, 173 F. Supp. 2d 419, 423 (D. Md. 2001). Moreover, under Maryland law, "legal malpractice may give rise to an action for breach of contract in cases involving employment of an attorney to perform a specific service in accordance with clearly stated instructions from the client-employer." *Fishow v. Simpson*, 55 Md. App. 312, 318, 462 A.2d 540, 544 (Md. App. 1983). Regardless of whether the contract obligation is express or implied,[6] the Plaintiffs "must allege . . . the existence of a duty between the plaintiff and the defendant in the first instance." *Flaherty v. Weinberg*, 303 Md. 116, 134, 492 A.2d 618, 627 (1985).

Here, Plaintiffs have adequately alleged a contractual duty. Plaintiffs expressly assert that there was a "contractual obligation." *See* Pls.' Compl. ¶ 95. Elsewhere, the Plaintiffs explain the general nature of the arrangement. *See, e.g.,* Pls.' Compl. ¶ 35. Such allegations are sufficient at this stage of the proceeding. *Cf. Natural Product Solutions, LLC v. Vitaquest Intern., LLC*, No. CCB-13-436, 2013 WL 3218094, at *2 (D. Md. June 24, 2013) ("[Plaintiffs]

---

[6] In dicta in *Abramson v. Wildman*, 184 Md. App. 189, 203-05 (2009), the Court of Special Appeals suggested that the extent of legal malpractice breach of contract claims may extend beyond express contractual provisions.

need not quote specific language from the contract in its complaint and has no obligation to attach to the complaint a copy of the contract."). Moreover, Plaintiffs allege that Defendants "committed a material breach in failing to perform the contracted services" and provide further specifics elsewhere in the Complaint. *See* Pls.' Compl. ¶¶ 39, 41-45, 96. These allegations satisfy Plaintiffs' obligations under *Iqbal*.

### E. Count Five – Gross Negligence, Wanton Reckless Disregard

Plaintiffs' fifth and final count alleges gross negligence. In Maryland, gross negligence requires:

> An intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Romanesk v. Rose,* 248 Md. 420, 423, 237 A.2d 12, 14 (1968). Here, as Defendants have pointed out, "Plaintiffs have, at best, alleged bad legal advice." Def. Mot. Dismiss p. 14. Again, Plaintiffs have failed to allege any sort of plausible claim. *Cf. Marriot Corp. v. Chesapeake & Potomac Telephone Co. of Md.*, 124 Md. App. 463, 479 n.9, 723 A.2d 454, 462 n.9 (Md. Ct. Sp. App. 1998) (noting that, because Maryland law requires plaintiffs must plead facts showing the defendant acted with wanton and reckless disregard, the "skeletal allegations in the complaint" that simply asserted defendants acted with gross negligence were likely insufficient although the defendant had not challenged the allegations in a motion to dismiss).

Moreover, Plaintiffs have failed to provide a shred of support for the notion that the type of conduct alleged in their Complaint can constitute gross negligence as a matter of law. This Court has been unable to identify a case in which a claim for gross negligence was successfully

15

premised upon mere economic loss rather than harm to an individual's person or physical property. *See Marriot Corp.*, 124 Md. App. at 478-81, 723 A.2d at 462-63 (rejecting claim of gross negligence in case where fiber optic cable was severed by road crew performing excavations); *see also Baker v. Roy H. Haas Assocs.*, 97 Md. App. 371, 629 A.2d 1317 (Md. Ct. Sp. App. 1993), overturned on other grounds by *Wolf v. Ford*, 335 Md. 525 (1994), (finding claim related to inadequate home inspection was a "classic example of ordinary negligence" and did not bear indications of wanton or reckless disregard); *Boucher v. Riner*, 68 Md. App. 539, 544-45, 514 A.2d 485, 488-89 (Md. Ct. Sp. App. 1986) (discussing and citing to a number of cases involving claims of gross negligence, all of which involved physical injuries (mostly related to the operation of automobiles)). Accordingly, Plaintiffs have failed to state a claim for gross negligence.

### F. Punitive Damages

Plaintiffs demand $500 million in punitive damages on their intentional misrepresentation claim and an additional $200 million in punitive damages on their gross negligence claim. As the counts for intentional misrepresentation and gross negligence fail to state adequate claims, Plaintiffs have also failed to state a claim for punitive damages. Nevertheless, the Court points out that Plaintiffs' Complaint fails to assert a sufficient demand for punitive damages as a matter of law as well.

In Maryland, punitive damages may only be awarded in cases where the plaintiff alleges that the defendant acted with "actual malice"—i.e., "evil motive, intent to injure, ill will or fraud" *Scott v. Jenkins*, 345 Md. 21, 29-30, 690 A.2d 1000, 1003–04 (1997); *see also Dow v. Jones*, 232 F. Supp. 2d 491, 496 (D. Md. 2007). The actual malice standard poses a high bar that requires pleading to "a high degree of specificity." *Dow,* 232 F. Supp. 2d at 496 (quoting

16

*Scott*, 690 A.2d at 1007). Here, the Plaintiffs have failed to allege any facts demonstrating "actual malice," or a "conscious or deliberate disregard," to engage in the alleged fraudulent conduct by these Defendants. Plaintiffs have failed to meet that bar with their conclusory allegations.

### III. Applicability of the Unclean Hands and *In Pari Delicto* Doctrines

Defendants also argue that the doctrines of unclean hands and *in pari delicto* bar Plaintiffs from recovering under any of Plaintiffs' stated claims. Essentially, Defendants argue that Plaintiffs admitted to the wrongdoing when Plaintiffs signed the Consent Order with the Maryland Attorney General's Office and that Plaintiffs are therefore barred from now recovering from their attorneys for conduct to which they have already admitted.

The doctrines of unclean hands[7] and *in pari delicto* are similar—but not identical— doctrines. The unclean hands doctrine applies to cases in equity and is designed to prevent parties who have been guilty of fraudulent, illegal, or inequitable conduct from resorting to courts of equity to further their goals. *Dickerson v. Longoria*, 414 Md. 419, 445, 995 A.2d 721, 743 (2010). As Judge Hollander of this Court has recently noted, the doctrine of *in pari delicto*, however, has an even broader scope:

> The related doctrine of *in pari delicto* is a general rule (subject to exceptions) that, "'[w]hen plaintiff and defendant have participated in fraudulent or illegal conduct, contrary to law or public policy or in fraud of the law itself, and are *in pari delicto,* plaintiff cannot maintain suit—at law or in equity—directly arising out of the misconduct.'" *Adams v. Manown,* 328 Md. 463, 487, 615 A.2d 611, 623 (1992) (Chasanow, J., concurring and dissenting) (quoting *Messick v. Smith,* 193 Md. 659, 669, 69 A.2d 478, 481 (1949)); *see also Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 109 Md.App. 217, 277, 674 A.2d 106, 135 (1996), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997). Its name derives from the Latin maxim, *"in pari delicto potior est conditio*

---
[7] The Court notes that Maryland courts have commonly referred to this doctrine as the "clean hands" doctrine. *See, e.g., Messick v. Smith*, 193 Md. 659, 667, 69 A.2d 478, 680 (1949).

> *defendentis*," which means that, in cases of equal fault, the defendant has the better position, or in other words, "where fault is mutual, the law will leave the case as it finds it." *Schneider v. Schneider,* 335 Md. 500, 508, 644 A.2d 510, 514 (1994).

*Goldstein v. F.D.I.C.*, No. ELH-11-1604, 2012 WL 1819284, at *15 (D. Md. 2012). The purpose of the doctrine is to protect the institutional interests of the courts and avoid situations where the court would otherwise have to endorse or reward inequitable conduct. *Id.* at *18. Moreover, the applicability of the doctrine is a fact-intensive determination to be made by the trial judge. *Id.*

At this stage, the Court believes it is premature to rule on the applicability of the unclean hands and/or the *in pari delicto* doctrines.[8] *See id.* at *18 ("Because the defenses are highly fact-specific, I will not resolve them at the pleading stage. . . . [where] the record before me is insufficient to determine whether the defenses should bar the Trustee's claims in this case."). Of course, this Court will certainly consider those doctrines at a later point in this proceeding.

## CONCLUSION

For the reasons stated above, Defendants Hamburger Law Firm, LLC, Brain Hamburger, Robert J. Seco, Alan N. Walter, Robert K. Ross, and MarketCounsel, LLC's Motion to Dismiss (ECF No. 6) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED with respect to Count II (Intentional Misrepresentation), Count III (Negligent Misrepresentation), and Count V (Gross Negligence) of Plaintiffs' Complaint and DENIED with respect to Count I (Legal Malpractice) and Count IV (Breach of Contract).

A separate Order follows.

Dated: September 24, 2013 /s/_____
Richard D. Bennett
United States District Judge

---

[8] The Court notes, however, that the doctrine of *in pari delicto* seems the more appropriate in light of the fact that Plaintiff seeks damages rather than an equitable remedy.

18